William A. Walsh, Jr., J.
This proceeding is brought pursuant to section 2-224 of the Village Law to determine the validity of the election held to decide the question of incorporation of the Village of Harrison in the Town of Harrison. The election was held on October 16, 1974, and resulted in 4,490 votes cast in favor of the proposal to incorporate, 746 opposed to the proposition, and 26 ballots.were declared void.
The election was certified by the town supervisor and town clerk on October 16, 1974. The petition herein was served on October 24 .and October 25, 1974. Five copies of the petition were posted at five conspicuous places in the Town of Harrison on October 25,1974.
On November 7, 1974, the issues raised by the petition were referred for trial to Special Term Part III. The hearing herein was held on November 14 and November 15,1974.
It is petitioner’s contention that the election should be set aside for the following irregularities:
1. The town supervisor and members of the town board provided free bus transportation, at town expense, to and from the only polling place for the residents of the West Harrison section of the Town of Harrison, thereby favoring one segment of the population in the town.
2. Prior to the election, the town supervisor and members- of the town board mailed a letter to every registered voter in the Town of Harrison which contained false statements and were designed to induce votes in favor of the incorporation of the Village of Harrison.
3. That the town supervisor and several other persons working the voting machines misled the voters by advising them, prior to entering the voting booth, to pull down the lever in the upper left hand corner of the voting machine, which was the lever for incorporation.
*545 4. That the polling place was not located in a convenient location within the territory proposed to be incorporated,
5. The town supervisor and others in charge of the election failed to secure and require all persons who voted in said election to sign the voting register but, instead, permitted voters to sign a pad prepared for that purpose. There was no requirement that a voter verify his signature or identification.
The burden of proving that this election should be set aside lies with the petitioner. She must demonstrate that the irregularities complained of are ‘ ‘ sufficiently large in number to establish the probability that the result (would be changed by a shift in, or invalidation of the questioned votes ’ ’ (Matter of Ippolito v. Power, 22 N Y 2d 594, 597-598) when applying these standards, the .conclusion is inescapable that the irregularities here, if any, do not warrant invalidation of the election. The proposal to incorporate the Village of Harrison received 85% of the votes cast. That landslide victory would not be lost unless it could be shown that some 1,800 more voters would have voted against incorporation were it not for the irregularities and abuses claimed by petitioner. It strains credulity to assume that the vote for incorporation could have been reversed and the 85% majority lost if the purported misconduct of town officials had not occurred. (See Matter of De Martini v. Power, 27 N Y 2d 149; Matter of Farano v. Monahan, 45 A D 2d 695.)
We turn now to a consideration of the purported irregularities in the election of October 16,1974.
It is charged that free bus transportation to and from the polls was available only to West Harrison residents. This, it is submitted, favored one segment of the population and deprived numerous voters of the opportunity to secure free transportation to the polls and to vote in the election.
The population of the Town of Harrison is approximately 22,000. The polling place was located in the downtown area which has a population of 14,000 to 15,000 people. West Harrison is the other densely populated area in the town. The downtown area and West Harrison contain more than 90% of the total population of the Town of Harrison.
The testimony was that signs around the polling place advertised free transportation to West Harrison by minibus and station wagon. The drivers of these motor vehicles testified that eight or nine trips were made to West Harrison, and that there were about four stops at the Purchase Community House to transport Purchase residents to the polls. Ho Purchase residents availed themselves of the free transportation and only *546 between 30 and 50 West Harrison residents took advantage of the transportation provided. Consequently, free transportation was not a factor in the election. Indeed, if free transportation to the polling place had been provided to all residents of the Town of Harrison, it is unclear whether more qualified voters would have cast a ballot and whether they would have voted against incorporation of the Village of Harrison. It is beyond peradventure that incorporation of the Village of Harrison, coterminous with Town of Harrison boundaries, was designed to prevent the secession of the Purchase community by the incorporation of the Village of Purchase. A petition for the incorporation of the Village of Purchase is presently awaiting action. If this election is validated, the Purchase incorporation petition must fall.
By letter dated October 7,1974, the town supervisor and councilmen urged citizens of the Town of Harrison to approve the incorporation of the Village of Harrison. The letter claimed incorporation was necessary to prevent the incorporation of the Village of Purchase with its 35% of the assessed valuation of the Town of Harrison. It declared that to make up for this loss of assessables, town taxes would increase 54%. Also, incorporation of Purchase would result in “ Chaos, both in Purchase and in ,the rest of the Town. The Town will have to cut its personnel — police, highway and sanitation workers — drastically to compensate for the loss of Pepsico and other large taxpayers. There will certainly be a jump in taxes for the average Harrison taxpayer.”
The letter expressed strong support for incorporation of the Village of Harrison and against incorporation of the Village of Purchase. However, the evidence offered failed to show that the letter contained false statements of fact, had the effect of intimidating the voters or that the opinions contained therein were not advanced in good faith (Matter of Incorporation of Vil. of Purchase, 54 Misc 2d 1049 — a 1967 election to determine whether Purchase should be incorporated as a village. The proposition lost by a vote of 136 to 134). Although, it could be argued that a tax increase would not amount to 50% in the event Purchase incorporated as a village, or that a loss of jobs would be minimal, yet it was conceded that the possibility existed for taxes to rise substantially and for drastic staff reduction to be necessary.
Upon the hearing, petitioner’s witnesses contended that voters at the polling place were told where the voting levers were located in such a way as to suggest that they vote for incorpo *547 ration. Also, the town supervisor told a prospective voter that a vote for incorporation was a vote for the town, and a vote against incorporation was a vote for Purchase.
Witnesses called by the proponents of incorporation explained that the voting machine contained hundreds of levers with the two used in the voting located in the upper left hand corner of the machine. When voters asked where the voting levers were positioned they were told where to look. Also, the statement attributed to the town supervisor was challenged at the polling place by petitioner’s attorney. Whereupon it was explained to the voter the effect of a vote for and against the proposition.
The testimony was that some 300 voters were advised of lever positioning. No complaints were registered with respect to this alleged irregularity in voting procedure. In any event, assuming that the 300 voters were agáinst incorporation and were induced to vote for incorporation by the poll watchers’ instructions, the outcome of the election would have not been affected.
An incorporation election must be held at a convenient place in the town (Village Law, i§ 2t-214) . It is conceded that only one polling place is permissible.
Petitioner maintains that the polling place was not conveniently located inasmuch as it was not in the geographic center of the Town of Harrison. The position of town officials is that a polling place was selected in the population center of the town and was convenient to most people.
The designation of a polling place in the population center of a town is not an arbitrary, capricious and unreasonable act which constitutes an abuse of discretion, nor is there evidence that the polling place was so inconvenient as to impede or restrain any qualified voter from casting a ballot (Matter of Koeppel v. Southard, 30 Misc 2d 463).
The town clerk is given the duty of making and filing an accurate alphabetical list of voters qualified to vote in an incorporation election. Such a list “ shall ” be copied from registration poll records. (Village Law, § 2-218, subd. [1].)
Prior to the election, the town clerk requested the registration poll records from the Commissioner of Elections. That request was rejected and an alphabetical list of registered Harrison voters was forwarded to the town instead. Since there was no poll book, each voter was asked .to sign a pad so that his signature could be checked against the qualified voter list supplied by the Commissioner of Elections. There were no challenges with respect to the qualification of any person to vote.
*548 The procedure followed was in substantial conformity with section 2-218 of the Village Law.
Petitioner has made timely objection to the election since she is a qualified voter who instituted a proceeding to determine the validity of the election within 10 days after the filing of the original certificate of election (Village Law, § 2-224). A copy of the verified petition was served on the town clerk, upon each person designated in the petition for incorporation, or designated in written objections to such petition, to receive service of papers in connection with the incorporation proceeding. Copies of the petition were posted in five conspicuous places in the town (Village Law, § 2-226).
The court finds that petitioner has failed to sustain her burden of proving the invalidity of the election. The petition is dismissed.