OPINION OF THE COURT
Daniel F. Luciano, J.
This is a special proceeding commenced by the petitioners, William Regula, Sheila McCauley and Robert Hesse, pursuant to section 2-224 of the Village Law seeking to have the court review and vacate an election held on August 21, 1987 to determine whether the proposed Village of Pine Valley should be incorporated within the Town of Southampton. By a separate notice of motion the petitioners, William Regula, Sheila McCauley and Robert Hesse, have moved for an order granting them leave to conduct disclosure proceedings relative to one of the grounds named as the basis for setting aside the election, namely, that notices of the election were not properly posted in public places. Also pending is a motion to intervene.
By a vote of 161 to 46 the incorporation of the Village of Pine Valley was approved.
The Town of Southampton has answered the petition and opposed the requested relief.
The first application to be considered is the motion to intervene made by Edwina Borders, Rose Zahlers and Michael Drozd who state in their moving affidavit: "We were the sponsors and incorporators of the Village in issue, and have an interest in insuring that the will of the electorate is not thwarted.” The proposed intervenors, Edwina Borders, Rose *621 Zahlers and Michael Drozd, have submitted their proposed verified answer to the petition which is virtually identical to the verified answer served by the Town of Southampton.
The petitioners, William Regula, Sheila McCauley and Robert Hesse, have opposed the motion to intervene.
CPLR 1013 provides: "Upon timely motion, any person may be permitted to intervene in any action when a statute of the state confers a right to intervene in the discretion of the court, or when the person’s claim or defense and the main action have a common question of law or fact. In exercising its discretion, the court shall consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party.”
To permit intervention in this case would not unduly delay the determination of this proceeding nor would it prejudice the substantial rights of any party. The fact that the proposed answer of the intervenors, Edwina Borders, Rose Zahlers and Michael Drozd, is virtually identical to that of the respondent, Town of Southampton, reflects that the intervenors, Edwina Borders, Rose Zahlers and Michael Drozd, seek to raise common questions of law and fact. (See, Brown v Waryas, 45 Misc 2d 77.) Accordingly, the court concludes that the motion for leave to intervene should be granted and the proposed verified answer deemed served. (Cf., Reed v Village of Larchmont, 19 AD2d 624.)
Turning to the substance of the current dispute the court notes that the verified petition raises two grounds upon which the election is challenged. The reply adds two grounds upon which it is urged that the election should be set aside.
The petitioners, William Regula, Sheila McCauley and Robert Hesse, contend that the ballots used in the election were in improper form and, thus, invalid.
Village Law § 2-220 (2) provides: "Manner of voting. Voting may be either by voting machine or by paper ballots * * * Ballots shall contain the words 'for incorporation’ and 'against incorporation’.”
The ballot employed in the subject election did not use the words "for incorporation” and "against incorporation”. The question put before the voters was: "Shall certain territory located within the Town of Southampton be incorporated as a village to be known as the Village of Pine Valley?” The ballot provided the voter with the option of voting "yes” or "no”.
The parties dispute the question of whether the word *622 "shall” in section 2-220 (2) of the Village Law should be construed as discretionary or peremptory language. (See generally, McKinney’s Cons Law of NY, Book 1, Statutes § 177.)
The rules for the construction of statutes which affect elections are summarized in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 175 as follows:
"The results of an election are usually not affected by the failure to follow precisely the detail by which the procedure is prescribed for holding elections and determining the results, and the statutes are considered merely directory to that extent. Thus, the failure to follow exactly the statutory requirements for the taking of oaths by the inspectors of election, the formal organization of the board, or the sealing of the election boxes do not invalidate the certificate of the inspectors as to the result of the vote.
"On the other hand, the performance of certain matters is absolutely mandatory. For example, the requirement that ballots shall be marked in a certain way and any other method be declared unlawful is mandatory, and a ballot not correctly marked cannot be counted. Likewise, a requirement, that certificates of nominations for certain officers shall be filed within a certain period before the election is mandatory, and where the statute makes it a condition prerequisite to an election that a petition signed by a certain proportion of the electors shall be filed, the requirement cannot be neglected.”
In the instant election one simply worded question was presented to the voters and the unambiguous response called for was an affirmative or negative vote. Certainly the court does not approve the disregard of the clear wording of section 2-220 (2) of the Village Law and the failure to use the language called for by the statute. The court, however, is constrained to conclude that the ballot employed would not deceive a voter and the election should not be set aside on this ground. (See, People ex rel. Williams v Board of Canvassers, 105 App Div 197, affd 183 NY 538.)
Another ground asserted for challenging the subject election (which is raised in the reply) is that two identified voters who were not eligible to vote in the election because they were outside the boundaries of the proposed incorporated village were, in fact, permitted to vote.
Again, the court concludes that this ground does not warrant vacatur of the election since in an election decided by a margin of 161 to 46 the ballots of two voters would not have *623 affected the outcome of the election. As observed by the court in Matter of Village of Harrison (80 Misc 2d 543, 545): "The burden of proving that this election should be set aside lies with the petitioner. She must demonstrate that the irregularities complained of are 'sufficiently large in number to establish the probability that the result would be changed by a shift in, or invalidation of the questioned votes’ (Matter of Ippolito v. Power, 22 N Y 2d 594, 597-598)”.
Another asserted ground for setting aside the election, which was not raised in the petition, is set forth in the reply affidavit of one Nicholas Chiesa. After contending that notices of the election were not properly posted pursuant to section 2-214 of the Village Law, Nicholas Chiesa states: "8. Compounding the fact that the notices were posted in locations lacking public access, is the question of the adequacy of the maps posted along with the notice of election. These maps were so inaccurate that they created, at best, defective notice and, at worst, serious confusion as to the boundaries of the proposed village as evidenced in Exhibits 'H’ and T, the map which was posted did not show a westerly and a portion of the southerly border. In other words, there was an insufficient description of where the village ended. Secondly, the map posted contained written metes and bounds descriptions of the borders. There was no indication as to which house on which side of the street was included in the village. In fact, I have been told in discussions with the Village Clerk that the boundaries of the proposed village actually cut through individual houses. I also was told that a determination was made as to whether a house was included in the village based upon whether the boundary included the bedrooms of that house or not. The map, however, contained no such information. Finally, the map posted with the notice of election and attached as Exhibit 'H’ confused the location of two streets located on the easterly side of Wildwood Lake. The map reversed the locations and names of Lakeview Road (which is mistakenly identified as Lake Road on the map) and of Lake Road. The error is critical, especially since only portions of Lakeview Road were to be included within the village. On the other hand, all of Lake Road (which is called Lakeview Road on the map) was to be included within the village. The confusing nature of the map and notice further is evidenced by the fact that of the thirty affidavit ballots cast, only seven were counted. The others were excluded because the voters apparently were later determined not to reside within the diffuse boundaries.”
*624 This argument raises the concern that the voters may have been misinformed as to the boundaries of the proposed village. It is noted that section 2-214 of the Village Law which directs the manner in which the notice of election is to be given does not require that a map reflecting the boundaries of the proposed village be made part of the notice. It may therefore be contended that the provided map, although not accurate, did not deprive the voters of any information to which they were entitled pursuant to section 2-214 of the Village Law.
This contention, however, may be insufficient to relieve the respondent, Town of Southampton, from the consequences of providing an inaccurate and incomplete map along with and as part of the notice of the election. To illustrate, in Matter of Village of Lynbrook (142 App Div 487) the notice provided by the town clerk for a village incorporation election provided inaccurate information as to the hours during which the election was to be held. The court considered the question of whether the notice should be deemed defective in the light of the argument that the notice would have been sufficient had it merely stated the date of the election and the voters been charged with the knowledge of the hours of the election as provided by the statute. The court found that the notice was defective and that the election was invalid stating, "[hjaving attempted to 'specify’ more completely than the statute possibly required, it was the duty of the town clerk at his peril to specify accurately.” (Supra, 142 App Div, at 489.) Similarly, in the present case it may well be the case that having attempted to provide more information concerning the borders of the proposed village than was required it was the duty of the town clerk at his peril to provide accurate information.
In this regard the related contention that inaccurate information concerning the proposed village’s boundaries provided in an article in the Suffolk Life newspaper would serve as a basis for setting aside the election must be rejected. The implicit suggestion in this argument, that inaccuracies disseminated by others than those charged with the duty of conducting a fair election could serve as a basis for setting aside an election, is the suggestion that never has there been a political election in this Nation which could not be vacated. Misinformation and inaccuracies are an inevitable by-product of the free and unfettered debate of political questions. The remedy for any such inaccuracies or misinformation is not to set aside elections. The remedy is for the advocates of a cause or *625 position to counter with their persuasive arguments and thereby sway the electorate.
There is, however, a procedural concern. As noted, the arguments raised in connection with the purportedly defective notice due to the inaccurate and incomplete map were raised in the petitioners’, William Regula, Sheila McCauley and Robert Hesse, replying papers. The issue was briefly mentioned at oral argument but no responsive argument was offered.
Under these circumstances the court deems it appropriate to adjourn this proceeding to enable the respondent, Town of Southampton, and the intervenors, Edwina Borders, Rose Zahlers and Michael Drozd, to serve papers in answer to the argument that the notice of election is deficient because of the inaccurate and incomplete map.
Accordingly, this proceeding is adjourned until November 30, 1987. The respondent, Town of Southampton, and the intervenors, Edwina Borders, Rose Zahlers and Michael Drozd, may serve such papers in opposition to the contention that the notice of election was deficient due to the inaccurate and incomplete map on or before November 18, 1987. The petitioners, William Regula, Sheila McCauley and Robert Hesse, may reply thereto prior to November 30, 1987. This proceeding shall be adjourned to November 30, 1987. All papers shall be delivered to the undersigned’s chambers at 4175 Veterans Memorial Highway, Ronkonkoma, New York 11779, on or before November 30, 1987.
Pending the adjournment of this proceeding the court shall withhold its determination with respect to the issue of whether the notice of election was properly posted in five public places (Village Law § 2-214) since it will be unnecessary to reach the question if the notice is deemed invalid for the reasons discussed above and because the petitioners, William Regula, Sheila McCauley and Robert Hesse, have sought an order permitting disclosure proceedings relative to the issue of proper posting in five public places.