OPINION OF THE COURT
Daniel F. Luciano, J.
This is a special proceeding brought by the petitioners, William Regula, Sheila McCauley and Robert Hesse, seeking to have the court review and vacate an election held on *635 August 21, 1987 to determine whether the proposed Village of Pine Valley should be incorporated within the Town of Southampton. Pursuant to this court’s order dated November 3, 1987 this matter was adjourned to permit further submissions with respect to the question of whether the posting of an allegedly inaccurate and incomplete map reflecting the proposed village, along with the statutorily required notice of election, warranted a judgment setting aside the election.
Pending the adjournment the intervenors, Edwina Borders, Rose Zahlers and Michael Drozd, have "cross-moved” "for an order striking new substantive matter raised in the reply.”
The procedural problem caused by the petitioners’, William Regula, Sheila McCauley and Robert Hesse, assertion of grounds to challenge the election for the first time in reply was addressed by the court in its November 3, 1987 memorandum. As a remedy the court adjourned the proceeding to enable the respondent, Town of Southampton, and the intervenors, Edwina Borders, Rose Zahlers and Michael Drozd, the opportunity to address the argument.
While the intervenors are plainly correct that a reply affidavit is not a proper place to raise new arguments in support of an application, the grant of the opportunity to respond thereto is a remedy sufficient to permit the issue to be considered. (See, Matter of Spofford Ave., 76 App Div 90; Poillon v Poillon, 75 App Div 536; 2 Carmody-Wait 2d, NY Prac § 8:59.)
Accordingly, the "cross-motion” to strike the arguments newly raised in the reply is denied.
Although there has been some confusion in the parties’ presentations as to which map actually accompanied the posted notices of election the question seems to be fairly resolved that the map in question is that depicted in exhibit I of the petitioners’, William Regula, Sheila McCauley and Robert Hesse, original reply papers and exhibit 2 of the petitioners’, William Regula, Sheila McCauley and Robert Hesse, reply papers submitted after the adjournment of this matter. This conclusion seems appropriate since this map is depicted in an actual photograph of one of the posted notices of election.
With respect to the alleged erroneous designation of Lake-view Road and Lake Road on the posted map, an affidavit of Howard W. Young, a licensed land surveyor whose firm prepared the subject map, states the following:
*636 "4. In this geographic area, it has long been common to have many different names for the same road. What the petitioners call Lake Road has been known as Lake Avenue, Lakeview Drive, Lakeshore Road, Old Westhampton Road, Westhampton Road, Riverhead-Westhampton Road, Wood Road, and Wildwood Road. What the petitioners call Lakeview Road has similarly be [sic] known by other names.
"5. The Town of Southampton Zoning Map denominates what petitioners call Lakeview Drive as Wildwood Road. What petitioners call Lake Road is designated thereon as Lake Avenue and as Westhampton Road.
"6. The Board of Elections Map denominates what petitioners call Lakeview Drive as Wildwood Road. What petitioners call Lake Road is denominated as Old Westhampton Road.
"7. The Suffolk County Tax Map denominates what petitioners call Lakeview Drive as Lake Avenue (Old Moriches Road). What petitioners call Lake Road is denominated as Lake Road (Westhampton Road).”
In response, the affidavit of Nicholas Chiesa, "a resident of the area to be incorporated as Pine Valley Village” states: "I cannot dispute the varying names of the streets in question as presented in the Young affidavit. I merely can tell the Court that the street signs in the area indicate that the street names are the reverse of those presented in the map which was posted.”
In reviewing the disputed map the court concludes that even if the subject map caused some confusion with respect to the names of the two streets in question, their locations, one north of the other, and the fact that one of the roads runs almost parallel to the eastern edge of Wildwood Lake and the other road extends to the north, are factors which compel the conclusion that any prospective voter familiar with the geographic area about which such voter’s ballot was to be cast should not, by the alleged mislabeling of these streets, have been misled in any fashion with respect to the boundaries of the proposed village.
The defect which the court finds more disturbing arising out of the posting of the purportedly deficient map is the failure of the map to depict the western boundary of the proposed village. In actuality it appears that had the copy of the map of the proposed village been extended by a fractional part of an inch the western boundary would have been depicted as a line virtually parallel to the edge of the provided map. From this *637 perspective the defect seems minimal since the posted map actually depicted virtually all of the proposed village. The problem is, however, that a prospective voter viewing the proposed map without the additional knowledge that the boundary was little more than a hair’s breadth away from the last depicted edge of the map could not know that he was viewing virtually all of the proposed village. A prospective voter could not from this map discern if the proposed village extended another few feet or a few miles. Nor can it be simply presumed that a prospective voter reasonably would have concluded that the border of the proposed village would be a straight line almost parallel to the edge of the depicted map (no matter what the distance therefrom) in view of the irregular boundaries of the proposed village on its eastern edge.
The intervenors, citing Matter of Norton (152 App Div 628) and Matter of Montalbo v Westall (31 Misc 2d 1020), assert that not every irregularity in the conduct of an election warrants the voiding of such election. Certainly the court agrees with that contention, having referred to this principle in its November 3, 1987 memorandum decision in quoting from section 175 of the McKinney’s Consolidated Laws of NY, Book 1, Statutes.
The broad principles, however, must be applied to the particular facts of this dispute. In its November 3, 1987 memorandum decision the court cited Matter of Village of Lynbrook (142 App Div 487) in which the notice of election inaccurately stated the time for voting. There the court said, "[h]aving attempted to 'specify’ more completely than the statute possibly required, it was the duty of the town clerk at his peril to specify accurately.” (Supra, 142 App Div, at 489.) As this court observed in its November 3, 1987 memorandum decision "in the present case it may well be the case that having attempted to provide more information concerning the borders of the proposed village than was required [in posting the map with the notice of election] it was the duty of the town clerk at his peril to provide accurate information.” (Matter of Regula, 138 Misc 2d 619, 624.) No argument presented has countered this statement.
To provide a map purporting to depict the village to be incorporated which fails to define the boundaries in a complete and accurate manner seems, to this court, to be as fundamentally deficient as an erroneous notice of election which purports to state the hours for the election in a complete and accurate manner. It is no less injurious to the *638 elective process to deceive prospective voters as to the question upon which they may vote than it is to deceive such prospective voters as to when they may vote on such question. Moreover, it is not any intent to deceive which is material but only whether such information as provided by the town clerk, "at his peril”, is sufficiently lacking in acuity to constitute a deception of ample import to warrant the voiding of an election.
Thus, while the papers before the court in no fashion suggest an intentional deception on the part of Kenneth Thommen, Town Clerk of the respondent, Town of Southampton, there is nevertheless a sufficient reason to void the instant election.
The court rejects the contention that the challenge to the subject map was required to have been raised pursuant to Village Law § 2-206 since a hearing pursuant to that section precedes the posting of notices of the election. (See, Village Law § 2-214.) Nor can the court accept the contention that use of the particular map herein was directed by the United States District Court in "so ordering” the parties’ settlement of their earlier Federal Court action.
Pursuant to section 2-230 of the Village Law "[i]f the election is set aside as a result of a final determination in a proceeding instituted pursuant to section 2-224 of this article, a new election shall be held.”
Accordingly, the court hereby voids the August 21, 1987 election for the incorporation of the proposed Village of Pine Valley and directs that a new election shall be held as provided by section 2-230 of the Village Law.
Finally, while the court has found it unnecessary to reach the question of whether the notices of the August 21, 1987 election were properly posted in five public places as required pursuant to section 2-214 of the Village Law, the court suggests that a reference to the Annotation at 90 ALR2d 1210 may be of assistance in assuring compliance with the posting requirements of Village Law § 2-214.